Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ACE DEVELOPMENT GROUP, LLC  Recurrida  v.  ANCHOR FUNDING, INC. Y OTROS  Peticionaria | KLCE202500607 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm.: K CD2012-0769  Sobre: Cobro de Dinero y Ejecución de Prenda e Hipoteca |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de marzo de 2026.

Comparecen Anchor Funding, Inc.; Juan Carlos Ayala Ríos; y la Sociedad Legal de Gananciales compuesta por Juan Carlos Ayala Ríos y María Milagros Nieves Cotto (en conjunto, parte peticionaria) mediante un recurso de *Certiorari*, para solicitarnos la revisión de la *Orden*, emitida el 24 de abril de 2025, y notificada el 5 de mayo del mismo año, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante la *Orden* recurrida, el tribunal de instancia declaró *Con Lugar* una *Moción en solicitud de nueva orden y mandamiento de ejecución de sentencia* incoada por la parte peticionaria del título y, en consecuencia, ordenó la ejecución de la *Sentencia* dictada el 15 de diciembre de 2015.[2]

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari*.

---

[1] Apéndice del recurso, a las págs. 848-850.
[2] *Íd.*, a las págs. 851-853.

Número Identificador

RES2026_____

I

Aun cuando esta es la primera vez que este Panel considera asuntos relacionados al caso del título, conviene mencionar que no es la primera vez que este haya sido objeto de un recurso apelativo. Específicamente y entre otros, de los autos se desprende que contra la *Sentencia* emitida el 17 de diciembre de 2015, y notificada el 8 de enero de 2016,[3] se interpuso un recurso de apelación en el alfanumérico KLAN201600626.[4] Dicho lo anterior, adoptamos por referencia el tracto procesal que surge de la *Sentencia* emitida el 31 de enero de 2018, en el antedicho recurso apelativo[5] y, en esta ocasión, nos circunscribiremos a los detalles atinentes a la controversia ante nos.

Luego del mencionado trámite apelativo, el 15 de noviembre de 2015, Scotiabank instó una *Moción solicitando ejecución de sentencia*.[6] En respuesta, mediante *Orden* emitida el 27 de noviembre de 2018,[7] el foro primario declaró *Ha Lugar* la misma y emitió el Mandamiento correspondiente.[8] En específico, fijó el precio mínimo para la primera subasta en $557,000.00 dólares, para el pago de $218,471.82 dólares por el principal e intereses del primer préstamo; $118,537.06 dólares por el principal e intereses del segundo; $238,665.98 dólares por el principal e intereses del tercero, así como por cargos moratorios y por deficiencia; y $65,700.00 dólares por concepto de gastos y honorarios. Asimismo, indicó que el importe de la *Sentencia* a favor de Scotiabank se pagaría hasta donde alcanzara el producto de la subasta.

---

[3] Apéndice del recurso, a las págs. 559-581. Mediante esta *Sentencia*, el foro de instancia declaró Ha lugar una *Demanda* sobre cobro de dinero y ejecución de prenda e hipoteca a favor de Scotiabank de Puerto Rico.
[4] Apéndice del recurso, a la pág. 662.
[5] *Íd.*, a las págs. 667-681.
[6] *Íd.*, a las págs. 715-718.
[7] *Íd.*, a las págs. 719-720.
[8] *Íd.*, a las págs. 721-722.

Varios años más tarde, el 26 de marzo de 2025, Luna Commercial II LLC (Luna y/o parte recurrida)[9] presentó una *Moción solicitando sustitución de parte*.[10] Adujo haber adquirido todo interés sobre las facilidades del crédito objeto de este caso. Explicó que, originalmente, dichas facilidades de crédito fueron otorgadas por R-G Premier Bank y que, conforme a la demanda de autos, Scotiabank de Puerto Rico instó la misma como sucesora en interés. Acotó que, posteriormente, las antedichas facilidades pasaron a manos de Oriental Bank y luego Luna adquirió todo interés sobre las mismas. En vista de lo anterior, solicitó que se ordenara la sustitución de parte de Scotiabank de Puerto Rico por Luna.

Por otro lado, el mismo 26 de marzo, Luna instó una *Moción en torno a continuación de los procedimientos de ejecución de sentencia*.[11] Expuso que, en el presente caso ya, desde noviembre de 2018, se había dictado una orden de ejecución de sentencia y que, con posterioridad a este evento, Luna adquirió todo interés sobre las facilidades de crédito objeto de la sentencia emitida en este caso. A tenor informó que, una vez se autorizara la sustitución de parte, promoverían los trámites para la ejecución de la sentencia.

Al día siguiente, el 27 de marzo de 2025, la parte peticionaria, por conducto del licenciado Iván Díaz Aponte, presentó una *Moción asumiendo representación legal*. Expuso que su representante legal sufrió un percance de salud que lo dejó incapacitado, por lo cual contrató a un nuevo abogado, y solicitó que se sustituyera así la representación legal en este caso.[12] Luego, el 31 de marzo de 2025,

---

[9] No obstante, cabe destacar que el 5 de mayo de 2025, se presentó ante el TPI una *Urgente Moción Solicitando Sustitución de Parte* en la que se solicitó que se sustituyera a Luna por Estrella Commercial LLC, quien adquirió los intereses sobre los créditos litigiosos. *Véase* Apéndice de la oposición, a la págs. 1-12. El 4 de junio de 2025, el foro de instancia autorizó la sustitución de Luna por Estrella Commercial LLC. *Véase* Apéndice de la oposición, a la pág. 13. La referida sustitución de parte fue notificada a este Tribunal por Estrella Commercial LLC, a través de una *Moción aclaratoria y en cumplimiento de orden* presentada el 10 de junio de 2025.
[10] Apéndice del recurso, a las págs. 725-726.
[11] *Íd.*, a las págs. 747-748.
[12] *Íd.,* a la pág. 749.

la parte peticionaria instó un escrito en el cual expresó que se presentaría escrito en oposición a la solicitud para continuar los procedimientos de ejecución,[13] e invocó la Regla 8.4 de Procedimiento Civil.[14]

En el interín, mediante *Orden* notificada el 4 de abril de 2025, el foro de instancia declaró *Ha Lugar* tanto la solicitud sobre nueva representación legal, la de sustitución de parte, así como el escrito mediante el cual se notificó la intención de continuar los procedimientos sobre ejecución de sentencia.[15]

De lo que sigue, el 11 de abril de 2025, la parte peticionaria instó una *Moción urgente de reconsideración, en solicitud de orden, y en oposición a Moción en torno a [continuación] de los procedimientos de ejecución de sentencia.*[16] Expuso que se presentaba la reconsideración dado a que el foro de instancia ya había resuelto el pedimento de la parte recurrida en torno a continuar los procedimientos sobre ejecución de sentencia. Expresó que no fueron notificados de la *Orden* notificada el 4 de abril de 2025, mediante la cual autorizaron la representación legal, ordenaron la sustitución de parte y declararon con lugar la intención de continuar los procedimientos sobre ejecución de sentencia.

En adición, esbozó en su solicitud de reconsideración que la solicitud de Luna era improcedente por estar prescrita. Específicamente, adujo que la acción de cobro de dinero reconocida a través de la *Sentencia* era una de naturaleza personal, por lo que había prescrito conforme al Artículo 1203 del Código Civil de 2020,[17] el cual dispone un término prescriptivo de cuatro (4) años para todas las acciones personales. Siendo así, esgrimió que la acción de cobro de dinero reconocida a través de la *Sentencia* prescribió el 28 de

---

[13] Apéndice del recurso, a las págs. 758-759.
[14] 32 LPRA Ap. V, R. 8.4.
[15] Apéndice del recurso, a las págs. 756-757.
[16] *Íd.*, a las págs. 791-795.
[17] 31 LPRA sec. 9495.

noviembre de 2024. Cónsono con lo anterior, sostuvo que la hipoteca que se pretendía ejecutar había quedado extinta por ser accesoria a la obligación que advino inexigible por prescripción. Por consiguiente, solicitó que se decretara la obligación personal como prescrita, y la hipoteca como extinta.

En reacción, el 16 de abril de 2025, Luna instó un escrito en oposición.[18] En esencia, esgrimió que los términos prescriptivos de las causas de acción de cobro de dinero y ejecución de hipoteca quedaron interrumpidos con la presentación de la demanda por parte de Scotiabank. No obstante, sostuvo que, de transcurrir algún término prescriptivo, luego de dictada la *Sentencia*, era de aplicabilidad el término de quince (15) años, conforme al Artículo 1864 del Código Civil de Puerto Rico de 1930.[19] Ello, por cuanto el Artículo 1814 del Código Civil de Puerto Rico de 2020 (Código Civil de 2020) establece que los términos prescriptivos que estuvieren transcurriendo al momento en que el nuevo código entró en vigor, mantienen la duración establecida en la legislación anterior.[20] Siendo así, el término prescriptivo aún no había transcurrido, toda vez que la *Sentencia* advino final y firme en el año 2018. Por tanto, solicitó que se denegara la solicitud del apelante.

Por otro lado, el 16 de abril de 2025, Luna interpuso una *Moción en solicitud de nueva orden y mandamiento de ejecución de sentencia*.[21] Adujo que, para proceder con la ejecución de la sentencia, era necesario que el foro de instancia emitiera una nueva orden y mandamiento, para conformar el epígrafe al de la parte sustituida, entiéndase, Luna, y actualizar las cuantías al tenor de la *Sentencia*. Así, solicitó que se ejecutara la *Sentencia* por: $307,073.14 dólares, en principal e intereses por el primer

---

[18] Apéndice del recurso, a las págs. 808-811.
[19] 31 LPRA sec. 5294 (derogado).
[20] Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 11719.
[21] Apéndice del recurso, a las págs. 796-800.

préstamo; $159,999.96 dólares, en principal e intereses por el segundo, y $304,213.88 dólares, en principal e intereses por el tercero, así como por gastos por mora. Además, $65,700.00 dólares, por concepto de costas, gastos y honorarios.

En reacción, el 21 de abril de 2025, la parte peticionaria presentó un escrito en oposición.[22] Sin haber renunciado a lo planteado sobre la prescripción del cobro de dinero y extinción de la hipoteca, adujo que Luna pretendía que la propiedad hipotecada respondiera por intereses de casi dieciséis (16) años, en contravención con la Ley Núm. 210-2015.[23] Ello, por cuanto la antedicha ley dispone que en ningún caso las hipotecas aseguran intereses correspondientes a más de cinco (5) años, aunque se estipule lo contrario.[24] Por consiguiente, solicitó que se denegara la petición de la ejecución de hipoteca la cual incluía la totalidad de los intereses devengados.

Por su parte, el 22 de abril de 2025, Luna presentó una réplica.[25] En síntesis, sostuvo que el Alto Foro ha reiterado que, al constituirse una hipoteca, las partes pueden estipular que el principal devengará intereses hasta el pago total de la deuda y que los acreedores tienen derecho a cobrar todos los intereses convenidos que estén vencidos hasta la satisfacción completa de la deuda.

En adición, citó la Sección 1.2 del Contrato de Préstamo suscrito entre las partes el 25 de febrero de 2004, la cual dispone que los intereses serían devengados hasta el pago total de la obligación. Asimismo, hizo referencia a la Escritura Núm. 15 sobre Modificación de Hipoteca la cual modificó la primera hipoteca para que garantizara el pago total de la deuda. Habiéndose obligado la

---

[22] Apéndice del recurso, a las págs. 812-814.
[23] Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6001 *et seq*.
[24] *Íd.*, Artículo 66, 30 LPRA sec. 6093.
[25] Apéndice del recurso, a las págs. 841-844.

parte apelante a satisfacer todos los intereses hasta el saldo completo del préstamo, reiteró su solicitud de que se ejecutara la hipoteca conforme a lo pactado.

Luego, el 24 de abril de 2025, el foro de instancia emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración interpuesta por la parte peticionaria, en torno a su oposición a la solicitud de nueva orden y mandamiento sobre ejecución de sentencia.[26] Dicha *Orden* fue notificada el 5 de mayo de 2025.[27] Consecuentemente, el foro *a quo* emitió la *Orden de ejecución de sentencia.*[28]

En desacuerdo, el 3 de junio de 2025, compareció ante nos la parte peticionaria, mediante una *Petición de certiorari* en el cual alzó los siguientes dos (2) señalamientos de error:

PRIMER SEÑALAMIENTO DE ERROR:

ERRÓ EL TPI AL RESOLVER QUE LA OBLIGACIÓN PERSONAL DE COBRO DE DINERO DE LA SENTENCIA NO ESTÁ PRESCRITA, Y QUE LA ACCIÓN HIPOTECARIA, POR SER UNA ACCESORIA, SE HAYA EXTINGUIDO[.]

SEGUNDO SEÑALAMIENTO DE ERROR:

ERR[Ó] EL TPI AL RESOLVER QUE LA PROPIEDAD DE LA PETICIONARIA RESPONDE HIPOTECARIAMENTE POR INTER[E]SES VENCIDOS POR MÁS DE 19 AÑOS, CUANDO LA LEY DISPONE QUE LA RESPONSABILIDAD HIPOTECARIA SE EXTIENDE A TAN SÓLO 5 AÑOS DE INTERESES VENCIDOS[.]

Por su parte, el 6 de junio de 2025, la parte recurrida presentó su *Oposición a petición de certiorari.*

Posteriormente, el 10 de junio de 2025, la parte recurrida instó una moción mediante la cual solicitó que se modificara el epígrafe conforme a una orden emitida por el tribunal de instancia. Mediante *Resolución* emitida el 12 de junio de 2025, en lo atinente ordenamos a la secretaria de esta Curia a sustituir a la parte recurrida por Estrella Commercial, LLC.

---

[26] Apéndice del recurso, a la pág. 816.
[27] *Íd.*, a la pág. 815.
[28] *Íd.*, a las págs. 817-819.

Luego, el 23 de junio de 2025, la parte peticionaria interpuso una *Moción informando paralización automática por radicación de petición de quiebra.* Dado a lo anterior, el 25 de junio de 2025, emitimos una *Sentencia* de archivo administrativo mediante la cual decretamos la paralización de los procesos en el presente caso.

Tiempo después, el 10 de marzo de 2025, ocurrieron dos (2) eventos procesales. El *primero* fue que la parte recurrida presentó una *Moción solicitando continuación de los procedimientos.* Adujo que el procedimiento de quiebra que motivó que el caso se hubiese paralizado fue desestimado. A tenor solicitó la continuación de los procedimientos. Por otro lado, el *segundo* evento fue que presentó una *Moción de sustitución de parte* para que se le sustituyera por Ace Development Group, LLC tras habérsele cedido todo interés sobre las facilidades de crédito objeto de este caso. En respuesta, mediante *Resolución* emitida el 11 de marzo de 2026, dejamos sin efecto la paralización de los procedimientos y ordenamos la reapertura del caso. De igual forma, declaramos *Ha Lugar* la solicitud de sustitución de parte.

Superados los trámites procesales antes reseñados y estando el caso el caso listo para su adjudicación, procederemos a disponer del mismo.

II

**A. Recurso de *Certiorari***

Como es sabido, el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[29] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[30]

---

[29] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[30] *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011).

Expedir el auto de *certiorari* "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[31] Conviene destacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[32] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[33] La Regla 40 del Reglamento del Tribunal de Apelaciones[34], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [35]

Precisa señalar que el Tribunal Supremo de Puerto Rico ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error

---

[31] *Rivera Figueroa v. Joe's European Shop*, supra.
[32] *BPPR v. SLG Gómez-López*, 213 DPR 314, 335 (2023) (Citas omitidas); *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434-435 (2013).
[33] *SLG Zapata-Rivera v. JF Montalvo,* supra, a las págs. 434-435.
[34] 4 LPRA Ap. XXII-B, R.40.
[35] *Íd.*

manifiesto.[36] Quiérase decir que, no hemos de interferir con el Tribunal de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuó con prejuicio o parcialidad; (ii) incurrió en craso abuso de discreción; (iii) o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[37]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[38]

III

En el presente caso, este tribunal revisor tiene ante su consideración la inconformidad de la parte peticionaria en torno a una orden emitida por el foro de instancia, mediante la cual ordenó la ejecución de la sentencia dictada el 15 de diciembre de 2015.

Habida cuenta que el recurso ante nuestra consideración se trata de un *certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso, la parte peticionaria sostiene que el foro primario incidió al entender que la acción de cobro de dinero no está prescrita y la acción hipotecaria, consecuentemente, no se extinguió. Asimismo, que el TPI erró al autorizar la ejecución de hipoteca en contravención con nuestro ordenamiento jurídico.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con perjuicio o

---

[36] *Coop. Seguros Múltiples de PR v. Lugo,* 136 DPR 203, 208 (1994).
[37] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[38] *Torres Martínez v. Ghigliotty,* 175 DPR 83, 96 (2008).

parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesa o de derecho sustantivo.[39] Puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[40] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Por ello, la intervención a través del recurso de *certiorari* tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[41]

Tras evaluar minuciosamente el recurso presentado por la parte peticionaria, la oposición de la parte recurrida, y luego de una revisión de la totalidad del expediente ante nos, es nuestra apreciación que no se configuran ninguna de las instancias que justificarían la expedición del auto de *certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones.[42]

Los señalamientos de error y los fundamentos aducidos en la posición presentada no logran activar nuestra función discrecional en el caso de autos. Asimismo, coincidimos que no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. Además, razonamos que la parte peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa, conforme a los asuntos planteados, constituirá un rotundo fracaso de la justicia.

Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

---

[39] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[40] *Pueblo v. Díaz León,* 176 DPR 913, 917 (2009).
[41] 4 LPRA Ap. XXII-B, R. 40.
[42] *Íd.*

## IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones